# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

Bucher & Christian Consulting, Inc., d/b/a BC*forward* (the "Company") and Plaintiff Robert Shotts ("Shotts") enter into this Settlement Agreement and Release ("Agreement") effective upon complete execution of this Agreement and agree as follows:

WHEREAS, Shotts brought an action under the Fair Labor Standards Act ("FLSA") for alleged unpaid overtime and for retaliation, and under Indiana Wage Claim Statute in the United States District Court for the Southern District of Indiana, Indianapolis Division (Case No. 1:19-cv-01186-JPH-DML) (the "Lawsuit");

WHEREAS, the terms of this Agreement were reached by the parties through arms-length negotiations conducted by counsel for the parties;

THEREFORE, the parties hereby agree as follows:

1. **Consideration.** In consideration for signing this Agreement and complying with the promises made herein, the parties agree to settle this matter for Ten Thousand Dollars ($10,000.00) ("Settlement Payment"). The Settlement Payment will be distributed as follows:

    (a) The Company agrees to pay Shotts the amounts as follows:

    Six Thousand, Five Hundred Dollars ($6,500.00) payable to Robert Shotts as wage income, minus lawful deductions, subject to Court approval of this Agreement, which shall be included in an IRS Form W-2 for Shotts.

    Shotts acknowledges that he is solely responsible for any tax liability resulting from the Settlement Payment distributed to him and agrees to indemnify and hold harmless the Company from any demands, assessments, liens or other claims from any governmental unit for tax payments related to the Settlement Payment that are deemed his responsibility, including all costs and attorneys' fees incurred by the Company in responding to such claims.

    (b) The Company agrees to pay attorneys' fees and costs in the amount of Three Thousand, Five Hundred Dollars ($3,500.00) payable to Henn Haworth Cummings & Page, with such amount reported on an IRS Form 1099 to Tax I.D. # 27-4370680, subject to Court approval of this Agreement.

The Settlement Payment will be distributed to counsel for Shotts within (30) days of receipt by counsel for the Company of an original of this Agreement executed by Shotts subject to Court approval of this Agreement, and subject to Shotts not revoking this Agreement with seven calendar days following his execution of the same as set forth herein.

2. **No Consideration Absent Execution of this Agreement.** Shotts understands and agrees that he would not receive the consideration specified in paragraph 1 above, except for the execution of this Agreement and the fulfillment of the promises contained herein.

1 | Page

3.     **General Release**

a.     **General Release of All Claims and Waiver.** Shotts knowingly and voluntarily releases and forever discharges the Company, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Shotts has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act;
- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990, as amended;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Worker Adjustment and Retraining Notification Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- Indiana Civil Rights Law, I.C. 22-9-1-1, *et seq.*;
- Indiana Minimum Wage Law, I.C. 22-2-2-1, *et seq.*, including the Indiana Equal Pay Act;
- Indiana Employment Discrimination Against Disabled Persons Act, I.C. 22-9-5-1, *et seq.*;
- Indiana State Wage Payment and Work Hours Laws, including I.C. 22-2-4-1, *et seq.*; I.C. 22-2-5-1, *et seq.*; and I.C. 22-2-9-1, *et seq.*;

- Indiana Family Military Leave Law, I.C. 22-2-13-1, *et seq.*;

- Indiana Occupational Safety and Health Act, I.C. 22-8-1.1-1, *et seq.*;

- Indiana AIDS Testing Laws, I.C. 16-41-6-1 and 16-41-8-1, *et seq.*;

- Indiana Smoker's Rights Law, I.C. 22-5-4-1, *et seq.*;

- any other federal, state or local law, rule, regulation, or ordinance; any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

        b. **Claims Not Released**. Shotts is not waiving any rights he may have to: (a) Shotts's own vested, accrued employee benefits under the Company's health, welfare, or retirement benefit plans as of the last date of employment; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

        c. **Governmental Agencies**. Nothing in this Agreement prohibits or prevents Shotts from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local governmental agency. However, to the maximum extent permitted by law, Shotts agrees that if such administrative claim is made, Shotts shall not be entitled to recover any individual monetary relief or other individual remedies.

4.        **Court Approval of Agreement.** Because Shotts's claims under the FLSA cannot be validly waived without court approval, the parties shall jointly request that the Court review and approve this Agreement. This Agreement is contingent upon the Court approving it. If the Court declines to approve this Agreement, this Agreement is null and void, and the Company will not have any obligation to make the Settlement Payment set forth in paragraph 1.

5.        **Dismissal of the Lawsuit.** Upon court approval and full payment of the Settlement Payment identified in this Agreement, Shotts's attorneys will execute and file, along with counsel for the Company, a stipulation to dismiss the Lawsuit with prejudice.

6.        **No Re-Hire**. Shotts understands and agrees that he is not eligible for rehire by the Company and further agrees not to seek employment with the Company in the future. Shotts agrees that any application for employment submitted by Shotts may be denied based on this Agreement without liability of any kind. Shotts agrees that if his application for employment is denied, such denial is based on the contractual terms of this Agreement and is not a result of retaliation or other improper motive.

7.     **Acknowledgments.** Shotts acknowledges that he has: (a) consulted with his attorneys prior to signing this Agreement, (b) carefully read and fully understands the provisions of this Agreement, (c) had a reasonable time to consider it, (d) discussed all the provisions of the Agreement that pertain to him with his attorneys, and (e) entered into the Agreement voluntarily.

8.     **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the State of Indiana. In the event any party breaches any provision of this Agreement, the parties affirm that either may institute an action to specifically enforce any term or terms of this Agreement. The parties further agree that remedies at law will not provide adequate relief for any breach of this Agreement and injunctive relief shall be appropriate. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language in paragraph 3, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

9.     **Nonadmission of Wrongdoing.** The parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Company of any liability or unlawful conduct of any kind.

10.    **Binding Nature.** This Agreement is binding upon Shotts and his heirs, administrators, representatives, and executors. This Agreement is also binding upon the Company and its successors.

11.    **Amendment.** This Agreement may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Agreement.

12.    **Entire Agreement.** This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any prior obligation of the Company to Shotts. Shotts acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

13.    **Counterparts.** This Agreement may be executed in one or more counterparts, all of which taken together shall constitute but one agreement. The parties agree that signatures transmitted by facsimile or other electronic means are acceptable the same as original signatures for execution of this Agreement.

**SHOTTS IS ADVISED THAT SHOTTS HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. SHOTTS ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SHOTTS'S SIGNING OF THIS AGREEMENT.**

**SHOTTS MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY SHOTTS SIGNS THIS AGREEMENT. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO ROBERT F. SEIDLER, COUNSEL FOR EMPLOYER, AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE."**

5/13/2019 scan0001.jpg

THE REVOCATION MUST BE PERSONALLY DELIVERED TO ROBERT F. SEIDLER, OR MAILED TO HIM AT JACKSON LEWIS, P.C., 211 N. PENNSYLVANIA STREET, SUITE 1700, INDIANAPOLIS, INDIANA 46204 AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER SHOTTS SIGNS THIS AGREEMENT AND GENERAL RELEASE.

SHOTTS AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

SHOTTS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHOTTS HAS OR MIGHT HAVE AGAINST RELEASEES.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement as of the date set forth below:

Bucher & Christian Consulting, Inc., d/b/a BC*forward*

_[signature]_
Robert Shotts

Date: 05/13/2019

By: _[signature]_

Printed Name: Justin P. Christian

Title: President / CEO

Date: 5/15/19

4823-0463-7846, v. 1

5 | Page

https://mail.google.com/mail/u/0/#inbox/FMfcgxwCgfwmjQSRPHzmWSSBtXLQwRhL?projector=1 1/1